PREMIER FEDERAL CREDIT UNION, PLAINTIFF-APPELLEE v. DOROTHY DOUGLAS, DEFENDANT-APPELLANT

No. COA94-1001

(Filed 2 January 1996)

**Consumer and Borrower Protection § 19 (NCI4th)— open- or closed-end account—compliance with Truth in Lending Act—genuine issues of fact—summary judgment improper**

The trial court erred in granting summary judgment for plaintiff where genuine issues of material fact existed as to whether the automobile loan transaction between the parties was an open-end "loanliner" plan or a closed-end extension of credit and as to whether the loan transaction complied with federal regulations promulgated under the Truth in Lending Act.

**Am Jur 2d, Consumer and Borrower Protection §§ 7-15, 35-38.**

Appeal by defendant from judgment entered 8 June 1994 by Judge William A. Vaden in Guilford County District Court. Heard in the Court of Appeals 16 October 1995.

*Johnson, Tanner, Cooke, Younce & Moseley, by Charles P. Younce, for plaintiff appellee.*

*Central Carolina Legal Services, Inc., by Janet McAuley-Blue, for defendant appellant.*

SMITH, Judge.

In this case of first impression, the sole issue on appeal is whether the trial court properly granted plaintiff's motion for summary judgment. Defendant argues that genuine issues of material fact exist on two pivotal aspects of its case precluding summary judgment. First, defendant asserts that an issue of fact exists as to whether the loan transaction between plaintiff Premier Federal

Credit Union (Credit Union), and defendant Dorothy Douglas, was an open-end or closed-end extension of credit. The second purported issue of fact is whether the loan transaction between the parties complied with federal regulations promulgated under the Truth in Lending Act (TILA), 15 U.S.C.A. §§ 1601-1666 (West 1982 & Supp. 1995). With regard to both questions, we find that genuine issues of material fact exist, and reverse the trial court's grant of summary judgment to plaintiff.

On 22 May 1987, defendant entered into a loan agreement with plaintiff in the amount of $9,828.24. The purpose of the loan was to provide funds for the purchase of an automobile. By the terms of the loan agreement, defendant provided plaintiff with a security interest in the automobile in exchange for the loan proceeds.

Defendant subsequently defaulted on the loan, resulting in the repossession and sale of the automobile by plaintiff. The proceeds of the sale were credited toward the balance owed the Credit Union by defendant. However, the proceeds gleaned from the sale were insufficient to pay the balance owed by defendant on the loan. As a result, plaintiff brought a deficiency suit against defendant for $5,576.98, representing the amount outstanding on the loan after the sale of the car by the Credit Union.

Defendant counterclaimed against plaintiff, alleging plaintiff failed to disclose required financial information on the loan, thereby violating the federal Truth in Lending Act, 15 U.S.C.A. §§ 1601-1666 (West 1982 & Supp. 1995). Defendant contends "she should be entitled to recoup from plaintiff all or part of [the Credit Union's] recovery in damages pursuant to TILA." Only the issues raised in defendant's counterclaim are pertinent to this appeal.

Summary judgment is a mechanism designed to dispose of " 'cases where there is no genuine issue of fact [and to] eliminate formal trials where only questions of law are involved.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971)). The moving party's " 'papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded.' " *Id.* (quoting 6 Moore's Federal Practice (2d ed. 1971) § 56.15[8], at 2439-40). In the instant case, plaintiff has failed to establish a lack of material fact with regard to defendant's claims of plaintiff's noncompliance with TILA.

The Truth in Lending Act was established to ensure adequate disclosure of loan terms to consumers, in order to effectuate informed decisions regarding the cost of credit. Accordingly, the Act states:

It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C.A. § 1601(a); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559, 63 L.Ed.2d 22, 27-28 (1980).

With this goal in mind, TILA sets forth mandatory regulations regarding loan disclosure criteria. 15 U.S.C.A. § 1601, *et seq.* Authority to regulate under and interpret TILA rests with the Board of Governors of the Federal Reserve System. *Milhollin*, 444 U.S. at 559-60, 63 L.Ed.2d at 27-28; 15 U.S.C.A. § 1604(a). Regulations promulgated by the Federal Reserve are commonly known as Regulation Z. *Id.* Defendant's appeal rests upon the premise that a question of fact exists as to whether plaintiff has violated TILA and Regulation Z.

Defendant contends the loan agreement was not an "open end credit plan," as defined by TILA and as argued by plaintiff. Open-end credit is defined by Regulation Z in the following manner:

(20) *Open-end credit* means consumer credit extended by a creditor under a plan in which:

(i) The creditor reasonably contemplates repeated transactions;

(ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and

(iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.

12 C.F.R. § 226.2(a)(20) (1994) (Regulation Z). Thus, the *quid pro quo* of an open-end loan is a financing structure aligned with the above regulation.

A loan transaction that is not open-ended is known as a "closed-end" loan. Closed-end loans are defined by Regulation Z as "consumer

credit other than open-end credit." 12 C.F.R. § 226.2(a)(10). Generally speaking, the central regulatory distinction between an open- and closed-end loan is the amount and character of the financial disclosures required. In *Maes v. Motivation for Tomorrow, Inc.*, 356 F.Supp. 47 (N.D. Cal. 1973), the Court noted that

> the term 'open end credit,' as it is used in these regulations, is intended to distinguish single purchase credit transactions, which are subjected to more stringent disclosure requirements, from transactions made under a revolving or continuing credit arrangement, such as under credit card or charge accounts, where such extensive disclosures are not practicable.

*Id.* at 50.

In the instant case, plaintiff alleges its loan agreement was unequivocally open-ended, and thus subject to a reduced disclosure standard under TILA. Plaintiff maintains the loan was made pursuant to an open-ended account, known as a "Loanliner." Plaintiff describes a Loanliner plan as

> a one-time agreement to establish a [Credit Union] member's loan account [which] may be used to access both secured and unsecured credit . . . sav[ing] loan processing time [and] repetitious loan processing steps . . . .

Plaintiff maintains it made all disclosures required by law for credit extended pursuant to an open-ended loan transaction.

In *Frost v. Central Credit Union of Illinois*, No. 93 C 1253, 1993 W.L. 335796 (W.D.N.Y. 1993), the federal district court was faced with facts similar to those at hand on a motion for summary judgment. The Credit Union in *Frost* articulated an argument identical to the one now posited by plaintiff, that "the car loan was merely a subaccount which was part of a multifeatured open end consumer plan", *i.e.*, a Loanliner. *Id.* The Credit Union in *Frost* asserted that, "whether it reasonably contemplated repeated transactions [pursuant to the Loanliner] is a question of fact to be decided in the context of its business and its relationship with [the Credit Union]." *Id.* We agree. The case here is nearly identical to *Frost*, except that now it is the borrower, rather than the Credit Union, arguing about whether repeated transactions were contemplated.

Defendant admits that it entered into a previous open-ended Loanliner relationship with plaintiff in 1984. However, defendant

maintains that the auto loan entered into in 1987 was not open-ended, but was a discrete one-time transaction. In support of this argument defendant has presented evidence which, if true, would indicate the term of the car loan to be nine years. Further, defendant argues that an automobile loan is not the type of transaction in which a creditor would reasonably contemplate repeated transactions with the average consumer. *Vines v. Hodges*, 422 F.Supp. 1292, 1297, 1298 n.10 (1976). These two assertions of fact, taken as true, necessarily raise an inference that the loan transaction at issue was not open-ended. 12 C.F.R. § 226.2(a)(20) (Regulation Z).

Plaintiff maintains that defendant's signature on the Loanliner Advance (which constituted the car loan) settles the factual issue regarding whether repeated transactions were contemplated by the parties. Plaintiff characterizes the Advance as evidence that a subaccount of Defendant's preexisting open-ended account was being used for the car purchase by defendant.

Plaintiff is mistaken. In *Maes*, the Court stated

that more is required to establish that a purchase is made under an 'open-end' credit arrangement than the recitations in the agreement . . . . If it were otherwise, a creditor could easily exempt what is in reality a single credit sale from the disclosures required under [Regulation Z] and thereby frustrate the Congressional purpose of providing meaningful disclosure of credit terms to the consumer merely by including such language in the agreement of sale—when in fact no continuing or revolving credit was contemplated by the parties.

356 F.Supp. at 50. We find the *Maes* analysis persuasive.

Plaintiff's motion for summary judgment is premised on the loan made to defendant operating as an open-ended credit transaction. Plaintiff states that it made all disclosures required for open-ended loans under Regulation Z. It is undisputed that other, more stringent disclosure rules apply if the transaction is closed-ended. *Id.* Defendant has presented evidence, which, if true, would tend to define the loan transaction between the parties as closed-ended. Further, plaintiff admits that the disclosures made were only those necessary for an open-ended account. It is thus axiomatic that plaintiff has not made the type of disclosures required for provision of closed-end credit.

As a result, genuine issues of material fact exist as to whether repeated credit transactions were contemplated by the parties. Equally in question is the type of credit provided defendant, closed-end or open-end; this question can only be decided by the factual "context of the [Credit Union's] business and relationship with defendant." *Frost*, 1993 W.L. 335796 at *1. These questions raise multiple factual issues as to whether the Truth in Lending Act was violated.

Therefore, we find that the trial court improvidently granted summary judgment to plaintiff, and we

Reverse and remand.

Chief Judge ARNOLD and Judge GREENE concur.